UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No. 5:21-CV-00173-D

| | |
|---|---|
| TRACIE BEARD,<br>individually and on behalf of all others similarly situated.<br><br>v.<br><br>JOHN HIESTER CHEVROLET, LLC | **MOTION TO BIFURCATE DISCOVERY OR IN THE ALTERNATIVE TO STAY DISCOVERY** |

NOW COMES Defendant, John Hiester Chevrolet, LLC, moving the Court for an Order to bifurcate class discovery, and allow discovery to first proceed only as to the claims of the named Plaintiff. In the alternative, Hiester moves to stay all discovery, including third-party subpoenas, until such time as the Court can rule on motions which Defendant contends are dispositive of the matter. The Plaintiff objects.

**INTRODUCTION**

The TCPA prohibits any person, absent the prior express consent of the telephone call recipient, from "mak[ing] any call...using any automatic telephone dialing system...to any telephone number assigned to a paging service [or] cellular telephone service." See 47 U.S.C. § 227(b)(1)(A)(iii); *Campbell-Ewald Co. v. Gomez*, ––– U.S. –––, 136 S.Ct. 663, 666-67, 193 L.Ed.2d 571 (2016). Prior express consent may be revoked orally or in writing. *See Adamcik v. Credit Control Servs., Inc.*, 832 F.Supp.2d 744, 753 (W.D. Tex. 2011); *Cherkaoui v. Santander Consumer USA, Inc.*, 2013 WL 12328769, *5 (S.D. Tex. June 7, 2013). A plaintiff who provides consent and fails to reasonably revoke it cannot state a claim and must be dismissed. *See e.g. Young v. Medicredit Inc.*, No. CV H-17-3701, 2019 WL 1923457, at *4 (S.D. Tex. Apr.

1

26, 2019), appeal dismissed, No. 19-20365, 2019 WL 6245547 (5th Cir. July 23, 2019) (dismissing claim against collection agency when plaintiff consented and did not revoke).

Ms. Tracie Beard went looking for a TCPA claim. She went to the Hiester website. After viewing a car on the website, she "opted-in," checking a box indicating that she consented to being contacting her about cars. She consented to the terms of conditions, including the clear opt-out instructions. She provided her phone number and contact information. A third-party vendor then sent a pre-recorded ringless voicemail. Ms. Beard did not opt out or otherwise revoke her previously provided consent.

Defendant will file a motion within 30 days, showing that dismissal is required because the Plaintiff "opted-in," requesting a sales call from Hiester, did not opt-out according to easily available means. *See e.g. Young v. Medicredit Inc.*, No. CV H-17-3701, 2019 WL 1923457, at *4. As set forth below, the Defendant has taken Ms. Beard's deposition. She is not a viable class representative. She has no actual material injury.

The Plaintiff now employs Rule 26 discovery looking for a viable plaintiff, seeking extensive consumer data that is entirely unrelated to the facts and allegations of Ms. Beard. The production sought by Plaintiff is simply needless and irrelevant pre-certification, and risks data breaches and violations of Hiester's customer's privacy inimical to the purposes of the TCPA and Hiester's hometown way of doing business. Hiester asks the Court to intervene, and to bifurcate and otherwise stay discovery pending dispositive motions for the reasons set forth herein.

## PROCEDURAL HISTORY

Plaintiff filed this action on April 14, 2021 alleging violation of the TCPA and seeking class status. Plaintiff Amended her Complaint on May 12, 2021. After obtaining an extension

2

from the Court, Defendant filed an Answer on June 14, 2021. On May 20, 2021, the parties held a joint Rule 26 conference and filed the Rule 26 report on June 8, 2021. On May 25, 2021, Plaintiff provided Initial Disclosures but did not provide any documents in connection therewith. On May 29, 2021, Defendant submitted initial disclosures and provided documents related to Defendant's involvement with the Plaintiff. The Court entered by the Court on July 7, 2021.

On May 25, 2021, Plaintiff served discovery requests on Plaintiff in the form of Interrogatories, Requests for Production of Documents and Requests for Admission. The Plaintiff's requests included requests for large volumes of information which relate solely to seeking potential class member information. On June 24, 2021, Defendant provided responses to the Interrogatories and Requests for Production of Documents responding to the discovery targeted toward' s plaintiff's claims but objecting to the discovery which was solely targeted at class claims. Defendant took Plaintiff's deposition on July 28, 2021, and the transcript from this deposition was received on August 6, 2021. On August 10, 2021, Plaintiff filed a Motion to Compel the class discovery.

## **DISCUSSION**

Hiester request that the Court bifurcate discovery to first focus on the merits of Tracie Beard's claim against Defendant. In the alternative, Heister asks the Court to stay class discovery pending the Defendant's motion to dismiss.

Whether to order bifurcation of claims/issues, during discovery or at trial, rests squarely within the broad discretion of the District Court. See Fed. R. Civ. P. 42(b); *Maher v. Continental Cas. Co.*, 76 F.3d 535, 545 (4th Cir.1996) (affirming bifurcation of claims and stay of discovery as to secondary claims); *In re Hutchinson*, 5 F.3d 750, 758 (4th Cir. 1993) (decisions on bifurcation reviewed for abuse of discretion); *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993)

3

(same).

As to the bifurcation of liability and class discovery in TCPA cases, a Maryland District Court in *Akselrod v. MarketPro Homebuyers,* recently held that birfucation is appropriate when TCPA fact issues related to the defendant's liability to the named plaintiff are "largely distinct from class certification issues (e.g., numerosity, commonality, typicality and adequacy of representation)." 2021 WL 100666, at *2 (D.Md. January 21, 2021). recently considered (1) the overlap between individual and class discovery, (2) whether bifurcation will promote Federal Rule of Civil Procedure 23's requirement that certification be decided at "an early practicable time," (3) judicial economy, and (4) any prejudice reasonably likely to flow from the grant or denial of a stay of class discovery. *Id.* (citing1 McLaughlin on Class Actions § 3:10 (11th ed. 2014)). Furthermore, limiting discovery in TCPA cases "has the potential to simplify the case and to save both parties the time and expense of class discovery, which can be particularly resource intensive." *Id*. (*citing, e.g., Physicians Healthsource, Inc. v. Janssen Pharm., Inc.*, No. CIV.A. 12-2132 FLW, 2014 WL 413534, at *4 (D.N.J. Feb. 4, 2014) (granting motion to bifurcate discovery in TCPA case where bifurcation would promote efficiency by permitting discovery on potentially dispositive issues that did not overlap with class issues).

In the alternative, Hiester requests that this Court exercise its inherent authority to stay all class discovery pending the Court's ruling on Hiester's forthcoming motion to dismiss. Rule 26(c) of the Federal Rules of Civil Procedure authorizes a court to issue an order limiting or staying discovery. Specifically, a court has discretion to stay discovery until the court's resolution of pending dispositive motions. *See Yongo v. Nationwide Affinity Ins. Co. of Am.,* No. 5:07-CV-94-D, 2008 WL 516744, at *2 (E.D.N.C. Feb. 25, 2008) (unpublished); *Tilley v. UnitedStates,* 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003). In certain cases, a stay of discovery may be appropriate to prevent a waste

4

of time and resources by the parties and to make efficient use of judicial resources. *United States v. A.T. Massey Coal Co.,* No. 2:07-0299, 2007 WL 3051449, at *2 (S.D. W. Va. Oct. 18, 2007) (unpublished). "Factors favoring issuance of a stay include the potential for the dispositive motion to terminate all the claims in the case or all the claims against particular defendants, strong support for the dispositive motion on the merits, and irrelevancy of the discovery at issue to the dispositive motion." *Yongo,* 2008 WL 516744, at *2 (quoting *Tilley,* 270 F. Supp. 2d at 735).

The Plaintiff will not be prejudiced. Hiester has conducted the deposition of the named Plaintiff and has disclosed all discoverable information related to claims of Ms. Beard in its possession. The requested stay will promote judicial economy. Ms. Beard's claim cannot survive dismissal.

Moreover, the denial of relief requested herein will prejudice Hiester. The defendant is a local, family business, which has been hailed into federal court on a frivolous TCPA claim by a plaintiff who specifically "opted-in," requesting a contact about a car. She admits that she did not opt out. Her claim cannot succeed under any theory. *See e.g. Young v. Medicredit Inc.*, No. CV H-17-3701, 2019 WL 1923457, at *4.

Denial of the requested relief will subject Hiester to further litigation expenses, discovery intrusions into private and protected consumer data, and other related prejudice in defending this baseless claim. Moreover, it will require production of protected information that is simply irrelevant pre-certification, and risks data breaches and violations of Hiester's customer's privacy inimical to the purposes of the TCPA and Hiester's hometown way of doing business.

1. **FACTUAL BACKGROUND**

Ms. Beard "opted-in" and requested that Hiester contact her. Specifically, on or about September 30, 2020, Plaintiff went to Hiester's website. She contacted Hiester from her cellular

telephone and submitted an online request for information (Exhibit A: Aff. of B. Johnson; Exhibit B: Dep. Of Tracie Beard, p. 76-77). Plaintiff supplied her name, email address and phone number to Defendant when she made her online inquiry (Ex. B: page 89, lines 4-9) Ms. Beard was contacted at the phone numbers for the phones she used to call Hiester or provided specifically to Defendant, during the time frame of October – December 2020 (D.E. 7: Am. Complaint, para. 22.). Plaintiff alleges she received recorded voicemail messages on October 28, 2020, November 24, 2020, and December 22, 2020. (Id.) Plaintiff alleges in her Complaint that the calls caused her harm by her having to stop what she was doing to answer the calls and because the calls made her phone unavailable for the receipt of other calls (Id).

Contrary to Ms. Beard's Complaint, the calls with prerecorded messages were actually ringless voicemails. Such messages are dropped directly into the voicemail of the cell phone user, and do not ring on the phone at all. (Exhibit C: Aff'd of Fuller and Johnson). Further, these calls do not use data from the consumer's phone plan and the consumer is not charged anything for these ringless voicemail drops. (Id.)

The Defendant has fully and frequently disclosed the facts surrounding Beard's opt-in to the Plaintiff. First, defendant voluntarily provided information documenting the foregoing facts with its initial disclosures on or about May 29, 2021. Defendant also provided discovery responses to the Plaintiff's written discovery requests on June 24, 2021. Defendant responded fully as to information relevant to Ms. Beard's claims. The Plaintiff now pushes for unrelated and irrelevant class discovery.

Plaintiff clearly does not have a valid claim. The Amended Complaint, coupled with the deposition testimony of the Plaintiff shows not only does Ms. Beard fail to allege a TCPA claim, she has no actual materialized injury and this Court lacks jurisdiction. Under these circumstances,

6

Case 5:21-cv-00173-D   Document 23   Filed 08/31/21   Page 6 of 14

the Court should limit discovery as requested herein to circumscribe Plaintiff's efforts to invade the protected consumer information of Hiester's valued customers in its search for a viable class Plaintiff. Plaintiff's deposition, attached hereto as Exhibit B, revealed the following:

   a. **Deposition Testimony of Plaintiff Beard**

Ms. Beard left Hiester a voicemail complaining twice that she was being interrupted at "her work" by Hiester's calls. [Ex. C.] In direct contradiction to Ms. Beard's claim that she was employed during the relevant time frame, [Ex. C], Plaintiff said at her deposition that she has been unemployed and on disability for years. [Ex. B.] She was not employed at all in 2020 and had not worked since approximately 2014/2015 (Ex. B: p. 40). Ms. Beard said at her deposition she receives disability payments, Medicaid, Medicare, rental assistance and food stamps (Id. at p. 64). The defendant submits that Ms. Beard's voicemail talking about her "work" was a ruse to establish statutory damages, where neither employment or damages exist.

Plaintiff has two cell phones, one which ends in the numbers 6590 (her "personal" cell phone) and another ending in 0677 (her "home" cell phone). (Ex. B: p. 68, 70), Beard used the 6590 phone to call Defendant when she made her vehicle inquiry (Id. p. 77, lines 23-25, and p. 85, lines 1-5). Beard received the prerecorded messages on the 6590 phone (Id. p. 77, lines 3-8). Beard recalled the name of the person she spoke with at Defendant on her 6590 number and that person was "Howard". Plaintiff also recalled speaking with "Jessica" that same day (Id. p. 84, line 25.) On or about the same date, Beard made an online inquiry to get a vehicle price and obtained a price of approximately $18,000.00 (Id. p. 88, lines 10-14). Beard admits that she provided her home cell and email address when she made the online inquiry (Id. p. 89, lines 1-9). Beard admits that she was "OK" with being contacted by Defendant using the contact information she provided when she made her online inquiry. (Id. p. 90, lines 13-16).

Beard admits that she opted in. Specifically, she checked a box in the online inquiry process which noted that she read the privacy notice and terms of service (Id. p. 91, lines 6-10). Beard was unsure as to whether she clicked on the links to review the terms of the privacy notice, privacy policy or terms of service. (Id. p.p. 91-92.) Beard was shown a sample screen shot of the check box which states that by checking she agrees to the terms of service, privacy policy and privacy notice and Beard indicated that the screen looked like the same one she walked through when she made her online inquiry to Defendant. (Id. p. 100, lines 10-17). Beard was aware that the "privacy policy", "terms of service" and "privacy notice" were hyperlinks on which she could click to review the terms (Id. line 24, p. 100 to line 7, p 101). Beard testified that she understood that by clicking on the "I agree" box, it meant that she was agreeing to the terms in the privacy policy, privacy notice and terms of service. (Id. p. 102, lines 3-9).

Beard testified that the prerecorded messages she received were on the 6590 number and that she received three of them in total (Id. p. 102, lines 17-21 and p. 103, lines 8-12). Beard testified that the allegation that she had to stop what she was doing when the call(s) came in was in reference to the calls to the 6590 number. (Id. p. 106, lines 9-12). Beard noted that she does not recall what she had to "stop doing" when the voicemail came in to the 6590 phone (Id. p. 107, lines 19.23).

Beard is not sure if any calls actually rang on her phone other than one (Id. p. 108, lines 8-10) and that she was speaking on the phone with a friend named Shirley at the time (Id. p. 109, lines 22-25). Beard was ordering a mask from her friend Shirley and did not even answer the "call" (Id. p. 109, lines 5-12 and p. 111, lines 8-10). Beard testified that even though she didn't actually answer the "call", the fact that she then had to later listen to the voicemail stopped her from immediately moving on to "maybe wash dishes, vacuum take a shower" because she had to

check the voicemail once she got off the phone with Shirley (Id. p. 112, lines 4-7).

Beard claims that she has damage because she continues to store the voicemail in her memory and without it, she could store more voicemails. (Id. p. 112, lines 22-25 and p 113, lines 4-6.) The defendant notes that the voicemail in question has already been downloaded and provided to Plaintiff's attorneys. There is no reason for Ms. Beard to store it on her phone, causing her alleged harm. Notably, the Complaint is devoid of facts alleged damages cause if this allegation about the phone using up Plaintiff's voicemail data.

Beard admits that if she clicked the "I agree" box, then she would be bound by the terms in the hyperlinks related to privacy policy, privacy notice and terms of service. (Id. p. 122, lines 9-18, and p. 136, lines 11-16). Beard testified that she didn't call the Defendant about them calling her 6590 number because she didn't know who to call (Id. p. 125, lines 16-23). This is of course, nonsense, since she knew she had spoken with Jessica and Howard and had the name Ryan from the actual voicemail. Despite clearly opting in, Beard claimed that she did not bother to call Defendant to "opt-out," *i.e.* ask not to be called because she was "busy dealing with other things" (Id. p. 126, lines 10-16).

When shown the screen shot from her online inquiry which had both her 0677 number, email address and 6590 number on it, Beard was reduced to claiming that someone else must have added her 6590 to her online inquiry and not her. (Id. p. 144, lines 7-14). Beard also claimed that her former employer info on the same screen must have "auto-filled."[1] (Id. p. 144 lines 24-25 and p. 145 lines 1-3). Beard admits that she did not unsubscribe in the manner required under the terms of service (Id. p. 152, lines 14-19).

---

[1] Of note, the screen shot of the online inquiry page of Beard is attached to the Beard deposition as an exhibit). See Ex. B.

9

Case 5:21-cv-00173-D Document 23 Filed 08/31/21 Page 9 of 14

## II. THE DISPOSITIVE ISSUES REQUIRE DISMISSAL OF MS. BEARDS CLAIM. THERE IS NO OVERLAP WITH CLASS ISSUES. DISCOVERY SHOULD BE LIMITED.

Hiester respectfully submits that the relief requested herein is necessary under the law. There are multiple fatal flaws in Ms. Beard's claim, requiring dismissal of her lawsuit. There is no overlap with class issues. A dispositive motion is forthcoming, and Plaintiff anticipates filing within 30 days.

First, Ms. Beard's claims fail because she has admitted to "opting-in" to receiving a call from Hiester, and acknowledged that she did not "opt-out" under the clearly available means provided to her. This case is factually indistinguishable from the *Young* case. *See e.g. Young v. Medicredit Inc.*, No. CV H-17-3701, 2019 WL 1923457, at *4. As in *Young*, Ms. Beard opted in and gave her contact information. *See id*. At her deposition she admitted, contrary to her Am. Complaint allegations, that she did not opt out.

Further, confirming the facts which will require dismissal, Plaintiff also admitted to checking the box on the online form which indicated agreement to the terms of service, privacy policy and privacy notice. These documents abundantly describe that all the contact information provided can be used for anyone for marketing purposes. In fact, the document warn customer not to provide information that they do not want to be used for marketing purposes. While there is a method to unsubscribe, Plaintiff admits that she did not unsubscribe by the required method. Therefore, by checking the box Defendant clearly provided express written consent for contact using the information she provided. While Plaintiff contends that there has been some sort of forgery or adding the 6590 number to her contact form, this is not a plausible or credible argument as illustrated by the affidavit of the company that runs the website. Furthermore, Plaintiff admits that she used the 6590 number to contact Plaintiff when she called. Therefore, Plaintiffs claims are defeated not only because she suffered no actual, materialized injury but because she provided express written consent for the calls

to the 6590 number.

Notably, this Circuit has not addressed whether a ringless voicemail drop is even a call for purposes of the TCPA. This is another legal issue which must be addressed prior to forcing Defendant to spend vast resources to provide large amount of class data of third parties.

Finally, Ms. Beard's deposition confirms that she has no material injury and therefore this Court lacks subject matter jurisdiction. A suit brought by a plaintiff lacking Article III standing is not a "case-or-controversy" overwhich a federal court has subject-matter jurisdiction. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). Named plaintiffs cannot establish standing on behalf of absent class members. "Every class member must have Article III standing in order to recover individual damages." *TransUnion*, 2021 WL 2599472, at *10. "Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not." *Id.* (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 466 (2016)). Plaintiffs bear the burden of establishing standing "for each claim that they press and for each form of relief that they seek . . . ." *Id.* "[S]tanding is not dispensed in gross" *Id.* at *10; *see also DaimlerChrylser Corp. v. Cuno*, 547 U.S. 332, 353 (2006).

On June 25, 2021, the Supreme Court held in *TransUnion LLC v. Ramirez* that if a plaintiff has not suffered an actual, concrete harm, and an alleged risk of future harm has not in fact materialized, there is no injury-in-fact and no standing to assert a claim for damages in federal court. *TransUnion LLC v. Ramirez*, No. 20-297, 141 S. Ct. 2190, 2021 WL 2599472 (S. Ct. June 25, 2021). The Court further held that in a putative class action, this "materialized harm" rule applies not only to named plaintiffs, but to every putative class member seeking to recover individual damages. "[S]tanding is not dispensed in gross," and must specifically be proven for every party on every claim. *Id.* at *10. Thus, to obtain classwide relief, the representative plaintiffs must be able to prove—with common evidence—that each and every putative class member suffered a common, concrete injury that has actually materialized in the

11

form of a manifested defect at the time of trial. *Id.* at *15-16.

Ms. Beard's testimony is clear: she has no concrete harm. She cannot even claim that she suffered "nuisance" or "annoyance" under these facts. She has no standing. At most, Plaintiff suffered an unmaterialized risk, and even that risk did not come to fruition per Plaintiff herself via her deposition testimony. This is the specific type of harm the court in *TransUnion* explicitly rejected. As the Supreme Court succinctly explained: "No concrete harm, no standing." *Id.* at *3, *15. *Ins. Co. of America v. Superior Court* (2009) 173 Cal.App.4th 814, 834 [no abuse of discretion]; *Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627, 634 (*Cryoport*) [abuse of discretion]; *First American, supra,* 146 Cal.App.4th 1564, 1576-1577 [abuse of discretion]; *Best Buy Stores, L.P. v. Superior Court* (2006) 137 Cal.App.4th 772, 779 [no abuse of discretion].)[1]

A recent California case is instructive on this point. In *First American, supra*, 146 Cal.App.4th 1564, the Court of Appeals issued a writ of mandate to reverse a precertification discovery order in a headless class action against title insurers who allegedly paid kickbacks to lenders for referral business. Contrary to his initial pleading, the named plaintiff was unable to prove the defendants ever made any payments in connection with his purchase of title insurance. He thereforewas never a member of the class alleged in the complaint.

Applying a balancing test, the appellate court concluded the trial court abused its discretion in allowing the Plaintiff unnecessary class discovery to root out a new/better plaintiff. The court emphasized refused to allow the named plaintiff's attorneys to use him as a placeholder in their effort to obtain more appropriate clients. The court stated, "the potential for abuse of the class action procedure isoverwhelming, while the interests of the real parties in interest are minimal. Precertification discovery under these circumstances would be an abuse of discretion."(*Parris*, *supra*, 146 Cal.App.4th at p. 1577.)

## CONCLUSION

For each of the above reasons, Defendant John Hiester Chevrolet, LLC requests that this Court bifurcate discover and amend the scheduling order to limit class discovery until Ms. Beard's

claims can be addressed on the merits in dispositive motions. In the alternative, Hiester asks that this Court stay discovery pending resolution of Defendants' motion to dismiss and for judgment on the pleadings, where the motions have the potential to terminate all claims against Defendant and the motion raises legal issues amenable to resolution without additional discovery.

Respectfully submitted this 31st day of August 2021.

THE SALMON LAW FIRM, LLP

 /s/ Elisa Cyre Salmon_____
Elisa Cyre Salmon
N.C. State Bar No. 35242
Post Office Box 185
Lillington, North Carolina 27546
T: (910)984-1012
F: (910) 893-4608
*Counsel for Defendant John Hiester Chevrolet, LLC*


BUZZARD LAW FIRM, LLP


 \_\_/s/ Robert A. "Tony" Buzzard_____

Robert A. "Tony" Buzzard
N.C. State Bar No. 18494
PO Box 700
728 S. Main Street
Lillington, NC 27546
910-893-2900 (phone)
910-758-2457 (fax)
*Counsel for Defendant John Hiester Chevrolet, LLC*

13

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed via CM/ECF, which will deliver notice to the following Plaintiff's Counsel, registered to receive service via CM/ECF:

Ignacio Hiraldo, Esq.
IJhiraldo@ijhlaw.com

David Wilkerson
dwilkerson@vwlawfirm.com

Manuel Hiraldo
mhiraldo@hiraldolaw.com


Respectfully submitted this 31st day of August 2021.


BUZZARD LAW FIRM, LLP


__/s/ Robert A. "Tony" Buzzard_____

Robert A. "Tony" Buzzard
BUZZARD LAW FIRM
PO Box 700
728 S. Main Street
Lillington, NC 27546
910-893-2900 (phone)
910-758-2457 (fax)
*Counsel for Defendant John Hiester Chevrolet, LLC*

14